**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Telecopier
Michael D. Sirota, Esq.
David M. Bass, Esq.
Felice R. Yudkin, Esq.
Attorneys for Bamboo Abbott, Inc. t/a Prestige Window
Fashions, Debtor-in-Possession

|  |  |
|---|---|
|  | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY CASE NO. 09-28689 (MBK) |
| In re:<br><br>BAMBOO ABBOTT, INC. t/a PRESTIGE WINDOW FASHIONS<br><br>Debtor-in-Possession. | Chapter 11<br><br>**APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF SSG CAPITAL ADVISORS, LLC AS INVESTMENT BANKER TO THE DEBTOR AND DEBTOR IN POSSESSION *NUNC PRO TUNC* TO OCTOBER 16, 2009, AND MODIFYING TIMEKEEPING REQUIREMENTS IN LOCAL RULE 2016-1, TO THE EXTENT APPLICABLE** |

Bamboo Abbott, Inc. t/a Prestige Window Fashions, the above-captioned debtor and debtor in possession (the "Debtor" or the "Company"), by this application (this "Application"), respectfully seeks the entry of an Order authorizing the Debtor to retain and employ SSG Capital Advisors, LLC ("SSG") as exclusive investment banker, effective *nunc pro tunc* to the October 16, 2009, the date that the Debtor and SSG executed SSG's engagement letter, and, to the extent applicable, modifying certain timekeeping requirements set forth in the Local Rules. In support

46758/0001-6065152v1

of this Application, the Debtor submits the Declaration of J. Scott Victor, Managing Director of SSG (the "Victor Declaration") filed contemporaneously herewith. In further support of this Application, the Debtor respectfully states as follows:

**Jurisdiction**

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for relief sought herein are Sections 327(a), 328(a) and 1107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the District of New Jersey Local Bankruptcy Rules (the "Local Rules") of the United States Bankruptcy Court for the District of New Jersey (the "Court").

**Background**

4. On July 19, 2009 (the "Filing Date"), the Debtor filed a voluntary petition for relief with the Court under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Case"). The Debtor is operating its businesses and managing its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Case.

5. On or about August 3, 2009, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors.

6. The Debtor has selected SSG to serve as its exclusive investment banker to assist the Debtor in the sale of all or a substantial portion of its assets.

**Relief Requested**

7. By this Application, the Debtor seeks the entry of an Order pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1 that: (a) authorizes the employment and retention of SSG as exclusive investment banker, effective *nunc pro tunc* to October 16, 2009, under the terms and conditions set forth in that certain engagement letter dated October 16, 2009 (the "Engagement Letter", a copy of which is annexed as Exhibit "A" to the Victor Declaration); (b) approves the terms of SSG's employment, including the proposed fee structure and the indemnification provisions set forth in the Engagement Letter, subject to the fee and expense review standards set forth in Section 328 of the Bankruptcy Code, effective *nunc pro tunc* to October 16, 2009, provided that the United States Trustee alone shall be entitled to review applications for payment of compensation and reimbursement of expenses by SSG under Section 330 of the Bankruptcy Code; (c) modifies the fee application and information requirements contained in Local Rule 2016-1, to the extent applicable; (d) waives the 10-day stay of the order approving SSG's retention under Bankruptcy Rule 6004(h); and (e) grants such other and further relief as the Court deems appropriate.

**SSG's Qualifications**

8. SSG is a nationally recognized investment banking firm with its principal office located at Five Tower Bridge, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428. SSG is a privately held investment banking firm that provides a broad range of financial advisory services, including private placement, sale and restructuring services, and specializes in helping middle market companies complete challenging financial transactions. SSG has eleven (11)

3

dedicated professionals with extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in Chapter 11 proceedings.

9. Since 2001, SSG has successfully completed over 160 investment banking assignments on behalf of clients facing challenging situations in the United States, Mexico and Europe.

## Services to be Rendered

10. Pursuant to the terms of the Engagement Letter, in consideration for the compensation contemplated therein, SSG's anticipated services include, but are not limited to, the following:[1]

   a. prepare an information memorandum describing the Debtor, its historical performance and prospects, including existing contracts, marketing and sales, labor force, management and anticipated financial results of the Debtor;

   b. assist the Debtor in developing a list of suitable potential buyers who will be contacted on a discreet and confidential basis after approval by the Debtor;

   c. coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;

   d. coordinate the data room and the due diligence investigations of potential buyers;

   e. assist the Debtor in coordinating site visits for interested buyers and work with the management team to develop appropriate presentations for such visits;

   f. solicit competitive offers from potential buyers;

   g. evaluate proposals received from potential buyers;

---

[1] This summary is qualified in its entirety by reference to the provisions of the Engagement Letter. To the extent there is any discrepancy between the terms contained in this Application and those set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Unless otherwise defined, capitalized terms used in this summary shall have the meanings ascribed to them in the Engagement Letter.

      h.    advise and assist the Debtor in structuring the transaction and negotiating the transaction agreements;

      i.    provide testimony on behalf of the Debtor related to the Sale process or any other matters related to SSG's investment banking assignment for the Debtor; and

      j.    otherwise assist the Debtor, its attorneys and accountants, as necessary, through closing on a best efforts basis.

## SSG's Disinterestedness

11.    To the best of the Debtor's knowledge, information, and belief, and except and to the extent disclosed herein or in the Victor Declaration, SSG and its professionals: (a) are not creditors, equity security holders or insiders of the Debtor; (b) are not and were not, within two (2) years prior to the Filing Date, directors, officers or employees of the Debtor; (c) do not hold or represent any interest materially adverse to the interests of the Debtor's estate; and (d) are not related to any judge of this Court, the United States Trustee or the Assistant United States Trustee for this District.

12.    Accordingly, the Debtor submits that SSG and its professionals are "disinterested persons" within the meaning of Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, and its employment is permissible under Sections 327(a) and 328(a) of the Bankruptcy Code and is in the best interests of all parties-in-interest.

13.    The Debtor's knowledge, information and belief regarding the matters set forth herein are based upon, and made in reliance on, the Victor Declaration. The Debtor understands that SSG will continue to monitor for any matters that might affect its disinterested status and will file a supplemental declaration in the event that additional disclosure becomes necessary.

14.    SSG was not engaged by the Debtor prior to the Filing Date and, to date, SSG has not received any funds from the Debtor.

**Professional Compensation**

15. Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of the Court, the Debtor and SSG have agreed that SSG shall be paid the following fees and expenses in respect of its services:[2]

    a. <u>Initial Fee</u>. An initial fee (the "<u>Initial Fee</u>") equal to $10,000, due upon Bankruptcy Court approval of SSG's retention application.

    b. <u>Monthly Fee</u>. Monthly fees (the "<u>Monthly Fees</u>") of $10,000 per month payable on the fifteenth (15th) of each month thereafter during the Engagement Term (as such term is defined in the Engagement Letter). The total of the Initial Fees and all Monthly Fees received by SSG will be credited against the Sale Fee (as defined below) owed to SSG.

    c. <u>Sale Fee</u>. Upon the closing of a Sale with any party, the Debtor shall pay SSG a fee (the "<u>Sale Fee</u>"), payable in cash, in federal funds via wire transfer or certified check, at closing of such the Sale equal to $300,000 plus 2.5% of the Sale proceeds plus assumed debt obligations in excess of $10 million of total value.

    d. <u>Expenses</u>. In addition to the foregoing fees, whether or not a Sale is consummated, and in addition to the fees noted above which may be payable to SSG hereunder, the Debtor agrees to reimburse SSG on a monthly basis for all of SSG's reasonable out-of-pocket expenses incurred in connection with the subject matter of this engagement.

16. Furthermore, if a Sale is consummated within six (6) months following the termination of the Engagement Letter with any party that SSG was engaged in discussions or due diligence during the Engagement Term, the Company shall pay SSG a Sale Fee.

17. The Debtor believes that the terms and conditions of SSG's employment are reasonable and comparable to compensation generally charged by investment bankers of similar stature for comparable engagements, both in and out-of-court. Given the numerous issues that SSG may be required to address in this Chapter 11 Case, SSG's commitment to the variable levels

---

[2] This summary is qualified in its entirety by reference to the provisions of the Engagement Letter. To the extent there is any discrepancy between the terms contained in this Application and those set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Unless otherwise defined, capitalized terms used in this summary shall have the meanings ascribed to them in the Engagement Letter.

of time and effort necessary to address all such issues as they arise, and the market price for SSG's services in engagements of this nature both out-of-court and in Chapter 11 contexts, the Debtor agrees that the fee arrangements in the Engagement Letter are reasonable.

18. The Debtor understands that the terms of SSG's employment and compensation, as described in the Engagement Letter, are consistent with employment and compensation arrangements typically entered into by SSG when providing investment banking services. SSG's employment and compensation arrangements are competitive with those entered into by other investment banking firms when rendering comparable services. SSG and the Debtor believe that the foregoing compensation requirements are both reasonable and market-based.

19. To the best of the Debtor's knowledge, information, and belief, and except and to the extent disclosed in the Victor Declaration, no promises have been received by SSG as to compensation in connection with this Chapter 11 Case other than as outlined in the Engagement Letter and SSG has no agreement with any other entity to share any compensation received with any person other than the principals and employees of SSG, pursuant to Section 504 of the Bankruptcy Code.

20. Additionally, under <u>Attachment A</u> of the Engagement Letter, the Debtor has agreed to indemnify, defend and hold harmless SSG and other Indemnified Parties (as defined in <u>Attachment A</u> to the Engagement Letter) from and against any losses, claims, damages, liabilities, or costs incurred to any such person in connection with the services it provides to the Debtor related to this Chapter 11 Case, except for any losses, claims, damages or liabilities that are finally determined by a court of competent jurisdiction to have resulted from SSG's gross negligence or willful misconduct (such provisions being the "<u>Indemnification Provisions</u>").

7

## Basis for Relief

21.  The Debtor seeks approval of SSG's fees and expenses pursuant to Bankruptcy Code § 328(a), which provides, in relevant part, that the Debtor "with the court's approval, may employ or authorize the employment of a professional person under § 327 … on any reasonable terms and conditions of employment, including on a … fixed or percentage fee basis, or on a contingent fee basis…." 11 U.S.C. § 328(a).  Consequently, Bankruptcy Code § 328(a) permits the Court to approve the terms of SSG's engagement as set forth in the Engagement Letter, including the fees described therein and the Indemnification Provisions.

22.  Bankruptcy Code § 328 permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions.  As stated in *In re National Gypsum Co.*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  The uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants reasonable compensation based on relevant factors of time and comparable costs, etc.  Under present § 328 the professionals may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted).

23.  The Debtor understands that the fee structure set forth in the Engagement Letter appropriately reflects the nature and scope of services to be provided by SSG and SSG's substantial experience in restructuring matters, and is consistent with the fee structures typically utilized by SSG and other leading investment bankers, who do not bill their clients on an hourly basis.

24. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large Chapter 11 cases within the Third Circuit, including within in this District. *See, e.g.*, *In re Adamar of New Jersey, Inc., et al.*, Case No. 09-20711-JHW (Bankr. D.N.J. May 27, 2009) (order authorizing retention of Moelis & Company LLC); *In re Tarragon Corporation, et al.*, Case No. 09-10555 (DHS) (Bankr. D.N.J. March 5, 2009) (order authorizing retention of Lazard Frères & Co. LLC); *In re EnCap Golf Holdings, LLC* and *NJM Capital, LLC*, Case Nos. 08-18581 (NLW) and 08-18590 (NLW) (Bankr. D.N.J. June 27, 2008) (order authorizing retention of Traxi LLC); *In re Integral Nuclear Associates, LLC et al.*, Case No. 07-15183 (NLW) (Bankr. D.N.J. July 10, 2007) (order authorizing retention of NatCity Investments, Inc.); *In re Best Manufacturing Group LLC et al.*, Case No. 06-17415 (DHS) (Bankr. D.N.J. September 7, 2006) (order authorizing retention of Houlihan Lokey Howard & Zukin Capital, Inc.); and *In re Marcal Paper Mills, Inc.*, Case No. 06-21886 (MS) (Bankr. D.N.J. December 22, 2006) (order authorizing retention of NatCity Investments, Inc.). *See also In re Tropicana Entm't, LLC*, Case No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008) (order authorizing retention of Lazard Frères & Co. LLC); *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Dec. 2, 2005) (order authorizing retention of Miller Buckfire & Co., LLC); *In re Foamex Int'l, Inc.*, Case No. 05-12685 (KG) (Bankr. D. Del. Oct. 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC); *In re Oakwood Homes Corp.*, Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC); *In re Kaiser Aluminum Corp.*, No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (authorizing retention of Lazard Frères & Co. LLC).

25. Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, a change was made to Bankruptcy Code § 328(a) that is highlighted in bold below:

9

> The trustee, or a committee appointed under § 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under §§ 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, ***on a fixed or percentage fee basis***, or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added). This change makes clear the ability of the Debtor to retain, with Bankruptcy Court approval, a professional on a fixed fee basis such as the fees proposed to be paid to SSG in this case.

26. Notwithstanding approval of its engagement under Bankruptcy Code § 328, SSG will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as those procedures may be modified or supplemented by Order of the Court. Notwithstanding the foregoing, the Debtor seeks authority to pay the Initial Fee and the Monthly Fees consistent with the terms of the Engagement Letter, and that SSG be excused from any obligation to file monthly or interim fee applications consistent with this Court's administrative fee order. Moreover, consistent with its ordinary practice and the practice of financial advisors and investment banking services providers in other Chapter 11 cases whose fee arrangements are not hours-based, SSG does not ordinarily maintain contemporaneous time records. Indeed, the Debtor believes the ultimate benefit to its estate of SSG's contemplated services cannot be measured merely by reference to the number of hours to be expended by SSG's professionals in the performance of services. Therefore, to the extent otherwise required under Local Rule 2016-1, the Debtor requests that SSG be excused, to the extent applicable, from compliance with the requirement to submit detailed time records. Instead, the Debtor requests that SSG only be required, in support of its final fee application, to describe the services provided on behalf of the Debtor during the applicable period and the results achieved and identify a list of

restructuring professionals who provided services to the Debtor during such period. The Debtor respectfully submits that tailoring of the requirements imposed by the Local Rules, to the extent applicable, as set forth herein will better fit the nature of SSG's engagement and its compensation structure.

27. The Debtor also requests, and SSG has agreed, that in the event that SSG seeks reimbursement for its attorneys' fees from the Debtor during the term of this Chapter 11 Case pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in SSG's own application and such invoices and time records shall be subject to the guidelines established by the Office of the United States Trustee for the District of New Jersey for compensation and reimbursement of expenses and the approval of the Court under the standard of Bankruptcy Code §§ 330 and 331, without regard to whether such attorney has been retained under Bankruptcy Code § 327 and without regard to whether such attorneys' services satisfy Bankruptcy Code §§ 330(a)(3)(C).

28. The Debtor and SSG believe that the Indemnification Provisions highlighted above are customary and reasonable for financial advisory engagements, both out-of-court and in Chapter 11 proceedings. *See*, *e.g.*, *In re United Artists Theatre Co.*, Case No 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000) (order authorizing indemnification of Houlihan, Lockey, Howard & Zukin Capital by debtors), *aff'd*, 315 F.3d 217 (3d Cir. 2003); *In re Joan & David Halpern Inc.*, 248 B.R. 43 (Bankr. S.D.N.Y. 2000) (order authorizing indemnification of Newmark Retail Financial Advisors by debtors), *aff'd*, No. 00 Civ. 3601 (JSM), 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000).

29. Similar indemnification arrangements have been approved and implemented in other large Chapter 11 cases by courts within the Third Circuit, including within in this District.

*See, e.g.*, *In re Adamar of New Jersey, Inc., et al.*, Case No. 09-20711-JHW (Bankr. D.N.J. May 27, 2009) (order authorizing retention of Moelis & Company LLC); *In re Tarragon Corporation, et al.*, Case No. 09-10555 (DHS) (Bankr. D.N.J. March 5, 2009) (order authorizing retention of Lazard Frères & Co. LLC); *In re EnCap Golf Holdings, LLC* and *NJM Capital, LLC*, Case Nos. 08-18581 (NLW) and 08-18590 (NLW) (Bankr. D.N.J. June 27, 2008) (order authorizing retention of Traxi LLC); *In re Integral Nuclear Associates, LLC et al.*, Case No. 07-15183 (NLW) (Bankr. D.N.J. July 10, 2007) (order authorizing retention of NatCity Investments, Inc. (SSG)); *In re Best Manufacturing Group LLC et al.*, Case No. 06-17415 (DHS) (Bankr. D.N.J. September 7, 2006) (order authorizing retention of Houlihan Lokey Howard & Zukin Capital, Inc.); and *In re Marcal Paper Mills, Inc.*, Case No. 06-21886 (MS) (Bankr. D.N.J. December 22, 2006) (order authorizing retention of NatCity Investments, Inc. (SSG)). *See also In re Leiner Health Prods., Inc.*, Case No. 08-10446 (Bankr. D. Del. Apr. 8, 2008); *In re Dura Auto. Sys., Inc.*, Case No. 06-11202 (Bankr. D. Del. Nov. 20, 2006); *In re FLYi, Inc.*, Case No. 05-20011 (Bankr. D. Del. Dec. 2, 2005); *In re Foamex Int'l, Inc.*, Case No. 05-12685 (Bankr. D. Del. Oct. 17, 2005); *In re Oakwood Homes Corp.*, Case No 02-13396 (PJW) (Bankr. D. Del. July 21, 2003); *In re Burlington Indus., Inc.*, Case No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003); *In re PC Landing Corp.*, Case No. 02-12086 (PJW) (Bankr. D. Del. Oct. 10, 2002); *In re Metrocall, Inc.*, Case No. 02-11579 (RB) (Bankr. D. Del. July 8, 2002); *In re Kaiser Aluminum Corp.*, Case No. 02-10429 (JKF) (Bankr. Del. Mar. 19, 2002).

30.     In light of the foregoing, and given the numerous issues that SSG may be required to address in the performance of its services hereunder, SSG's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market price for SSG's services for engagements of this nature, the Debtor believes that the terms and conditions of the

Engagement Letter are fair, reasonable and market-based under the standards set forth in Bankruptcy Code § 328(a).

31. The Debtor also requests waiver of the 10-day stay of effectiveness of the Order approving SSG's retention pursuant to Bankruptcy Rule 6004(h). Waiver is warranted because the Debtor requires the assistance of SSG in this case, and any payments to SSG would be made pursuant to the procedures established by the Bankruptcy Code, Bankruptcy Rules, Local Rules and applicable Orders of this Court.

## No Prior Request

32. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests entry of an Order authorizing the retention and employment of SSG as financial advisor for the Debtor *nunc pro tunc* to October 16, 2009, and granting the Debtor such other relief as is just and proper.

Date: October 26, 2009         Bamboo Abbott, Inc. t/a Prestige Window Fashions


*/s/ Joel S. Botwick*
JOEL S. BOTWICK, PRESIDENT

13