**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, Illinois 60606-4637
Brian T. May, Esq.
Craig E. Reimer, Esq.
(312) 701-7049
(312) 706-8239 Facsimile
Attorneys for Ventanas Acquisition
Corporation, Stalking Horse Bidder
(admitted *pro hac vice*)

|  |  |
|---|---|
| In re:<br><br>BAMBOO ABBOTT, INC. t/a Prestige Window Fashions,<br><br>          Debtor-in-Possession. | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>HONORABLE MICHAEL B. KAPLAN<br>CASE NO. 09-28689 (MBK)<br><br>Chapter 11<br><br>**Approval Hearing: January 21, 2010 at 3:00 p.m.** |

**DECLARATION OF JOHN D. LANGDON IN CONNECTION WITH DEBTOR'S MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(A), 363, 365 AND 1113 AND FED. R. BANKR. P. 2002, 6004 AND 6006: (1) APPROVING "STALKING HORSE" ASSET PURCHASE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (2) APPROVING BIDDING PROCEDURES AND FORM, MANNER AND SUFFICIENCY OF NOTICE; (3) SCHEDULING (A) AN AUCTION SALE AND (B) A HEARING TO CONSIDER APPROVING THE HIGHEST AND BEST OFFER; (4) AUTHORIZING THE DEBTOR TO SELL SUBSTANTIALLY ALL OF ITS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND TO ASSUME AND ASSIGN CERTAIN RELATED EXECUTORY CONTRACTS, UNEXPIRED LEASES AND ITS COLLECTIVE BARGAINING AGREEMENT; AND (5) GRANTING OTHER RELATED RELIEF**

COUNTY OF NEW YORK      )
                                              ) ss:
STATE OF NEW YORK        )

      I, John D. Langdon, hereby declare that the following is true to the best of my knowledge, information and belief:

1. I am a Managing Director at Platinum Equity Advisors, LLC, which is an affiliate of Ventanas Acquisition Corporation (hereinafter, the "Purchaser"), an acquisition vehicle formed to acquire certain of the assets of the above-captioned debtor and debtor-in-possession, Bamboo Abbott, Inc. t/a Prestige Window Fashions (the "Debtor") pursuant to the terms of the Asset Purchase Agreement (the "Purchase Agreement") described in the Verified Application in Support of the Debtor's Motion for an Order Pursuant to 11 U.S.C. §§ 105(a), 363, 365 and 1113 and Fed. R. Bankr. P. 2002, 6004 and 6006: (1) Approving "Stalking Horse" Asset Purchase Agreement for the Sale of Substantially All of the Debtor's Assets; (2) Approving Bidding Procedures and Form, Manner and Sufficiency of Notice; (3) Scheduling (A) an Auction Sale and (B) a Hearing to Consider Approving the Highest and Best Offer; (4) Authorizing the Debtor to Sell Substantially All of its Assets Free and Clear Of Liens, Claims, Encumbrances, and Interests and to Assume and Assign Certain Related Executory Contracts, Unexpired Leases and its Collective Bargaining Agreement; and (5) Granting Other Related Relief (the "Sale Motion") [Docket No. 258], and filed together with the Notice of Entry into Asset Purchase Agreement with Ventanas Acquisition Corporation [Docket Nos. 269, 273].

2. I am duly authorized to make this Declaration on the Purchaser's behalf. I am familiar with the facts stated herein and submit this Declaration in connection with the Sale Motion. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents maintained under my general supervision and control in the ordinary course of business, my review of the Debtor's business and financial projections through due diligence efforts or my opinion based upon my experience and knowledge and information concerning the financial affairs of the Purchaser. If I were called upon to testify, I would testify competently to the facts set forth in this Declaration.

3. On or about January 14, 2010, after extensive, arms-length negotiations, conducted in good faith, with the Debtor and its financial and legal advisors, the Purchaser entered into the Purchase Agreement with the Debtor, subject to higher and better offers. Pursuant to the terms of the Purchase Agreement, the Purchaser has agreed to pay in connection with its acquisition of the Purchased Assets (as defined in the Purchase Agreement) the "Purchase Price" as defined in Section 4.1 of the Purchase Agreement.

4. Based on my experience, my due diligence review of the Debtor's business and financial projections and my understanding of the Purchaser's plans for the Debtor's business after consummation of the sale, I believe that Purchaser will have sufficient liquidity to pay its debts as they become due, including any obligations under the executory contracts and/or unexpired leases that may be assumed and assigned to Purchaser in accordance with the applicable provisions of the Purchase Agreement (the "Assumed Contracts").

5. The Purchaser will pay all cure amounts related to the Assumed Contracts (the "Cure Amounts") as set forth in the Cure Notice as may be modified pursuant to the proposed order submitted in connection with the approval of the Sale Motion. The Purchaser's willingness to pay the Cure Amounts and other consideration comprising the Purchase Price under Section 4.1 of the Purchase Agreement is further evidence of the seriousness of its offer as well as its ability to perform under the Assumed Contracts in the event the sale is consummated.

6. Other than discussions relating to due diligence efforts, negotiation of the Purchase Agreement and other matters relating to the sale and the Debtor's Chapter 11 case, neither I nor any other officer, director, employee, agent or representative of the Purchaser has any connection with the current officers and directors of the Debtor. By way of disclosure, however, the Purchaser intends to finance a portion of the Purchase Price with Wells Fargo

Bank, National Association ("Wells Fargo"), the Debtor's senior secured lender, and enter into an asset based credit facility with Wells Fargo in connection with the operations of the Purchaser's business after closing.

7. In addition, representatives of the Purchaser have had some preliminary discussions with certain of the Debtor's current officers (including Joel S. Botwick and Phil S. Goldweitz) concerning potential post-closing employment, including the nature of their employment and proposed compensation, which is anticipated to be no more (and in fact will likely be less) than the current employment and compensation arrangements. Except as otherwise stated herein, the Purchaser does not have any understanding, arrangement or agreement with, or to my knowledge any other connection to any of the Debtor's current or former officers or directors.

8. Neither the Purchaser nor any affiliate of the Purchaser has had any discussions or entered into any agreement, understanding or arrangement with any other person or entity to attempt to control the purchase price of the Debtor's assets or to dissuade or impede any person or entity from conducting due diligence on the Debtor or considering bidding on the Debtor's assets. There are no agreements between or among the Purchaser or, to my knowledge, any of its affiliates regarding the disposition of the Debtor's assets in the event that the Purchaser is the successful purchaser.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 21, 2010

        */s/ John D. Langdon*